

1  KYRA KAZANTZIS, Bar No. 154612, kyrak@lawfoundation.org
   JAMES ZAHRADKA, Bar No. 196822, jamesz@lawfoundation.org
2  **PUBLIC INTEREST LAW FIRM**
   KIM PEDERSON, Bar No. 234785, kimp@lawfoundation.org
3  **FAIR HOUSING LAW PROJECT**
   **LAW FOUNDATION OF SILICON VALLEY**
4  111 West St. John Street, Suite 315
   San Jose, California 95113
5  Telephone: (408) 280-2401
   Fax: (408) 293-0106
6
   MICHAEL HENDERSHOT, Bar No. 211830, michael.hendershot@skadden.com
7  ANDREA SCHELEY, Bar No. 229363, andrea.scheley@skadden.com
   **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
8  525 University Ave., Suite 1100
   Palo Alto, CA 94301
9  Telephone: (650) 470-4500
   Facsimile: (650) 470-4570
10
   EVE HERSHCOPF, Bar No. 159486, ehershcopf@childcarelaw.org
11 ED BOLEN, Bar No. 221715, ebolen@childcarelaw.org
   **CHILD CARE LAW CENTER**
12 221 Pine Street, Third Floor
   San Francisco, CA 94104
13 Telephone: (415) 394-7144
   Facsimile: (415) 394-7140
14
15 Attorneys for Plaintiffs Bree and Micah Kuyat
16
17              UNITED STATES DISTRICT COURT
18             NORTHERN DISTRICT OF CALIFORNIA
19                    (San Jose Division)
20
   BREE KUYAT and MICAH KUYAT        ) Case No. **C08 03448 RS**
21        Plaintiffs,                )
                                     ) **COMPLAINT FOR MONETARY,**
22        v.                         ) **INJUNCTIVE AND DECLARATORY**
                                     ) **RELIEF**
23 USAA CASUALTY INSURANCE           )
   COMPANY                           ) **[CLASS ACTION]**
24                                   )
          Defendant.                 ) **DEMAND FOR JURY TRIAL**
25                                   )
26                                   )
27                                   )
28
                          1

Case No.:
COMPLAINT [CLASS ACTION]

# I.    INTRODUCTION

1.    California law recognizes the importance of ensuring the availability of quality family child care homes (or daycare). *See* Cal. Health & Safety Code § 1597.40. USAA Casualty Insurance Company (hereinafter "USAA-CIC"), however, follows a practice undermining these public policy concerns and stifles the availability of quality family child care homes by refusing to insure rented homes where tenants will operate the daycare. Because of this practice, licensed daycare operators are losing or being denied housing. USAA-CIC's refusal to insure these properties constitutes illegal housing discrimination because of its disproportionate negative effect on households headed by women and families with children and because it discriminates arbitrarily based on operation of a family child care home. Such refusal is also an illegal and unfair business practice because it violates a number of California laws that are protective of daycares.

2.    Plaintiff Bree Kuyat, a licensed child care provider, and her husband, Plaintiff Micah Kuyat ("Plaintiffs") bring this action on behalf of themselves and all those similarly situated who lost or were denied housing or were forced to give up their daycare operations because USAA-CIC threatened to cancel their landlords' insurance if they planned to operate a family child care home. Plaintiffs, on behalf of themselves and the class they represent, charge that USAA-CIC discriminates against operators of family child care homes on the basis of gender and familial status by refusing to insure rented homes where tenants will operate a daycare. This class action seeks injunctive, declaratory, and monetary relief against Defendant for its violation of state and federal laws against unlawful housing discrimination and protecting licensed daycare homes.

# II.    JURISDICTION AND VENUE

3.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state-law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus

2

of related facts.  Plaintiffs' state-law claims are related to Plaintiffs' federal claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

4.      This Court has jurisdiction over Plaintiffs' action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  Injunctive relief is authorized by 28 U.S.C. § 2203 and Rule 65 of the Federal Rules of Civil Procedure.

5.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within the Northern District of California.

### III.    INTRADISTRICT ASSIGNMENT

6.      Intradistrict assignment in San Jose is proper because the unlawful conduct that gives rise to these claims occurred in Santa Clara County.

### IV.    PARTIES

7.      Plaintiff Bree Kuyat is an adult woman who is licensed to operate a family child care home for six or fewer children.  Plaintiff Micah Kuyat, her husband, is an adult man.  Mr. and Mrs. Kuyat reside in Morgan Hill, California with their two minor children, Mikayla and Jayse Kuyat.  Bree Kuyat's principal source of income is the revenue generated by the operation of her daycare home.  The Kuyats rely on the income generated by the operation of Bree Kuyat's licensed daycare home to provide for their family.

8.      Plaintiffs are informed and believe that, at all relevant times, Defendant USAA Casualty Insurance Company (hereinafter "USAA-CIC") was and is a Texas corporation, is registered as a California foreign corporation and regularly conducts business activity with California and Santa Clara County residents.

9.      At all relevant times, Defendant was engaged in the business of providing insurance—including, but not limited to, homeowners' and renters' insurance—to members of the public.

//

3

## V.    LEGAL BACKGROUND

10.    California has a licensing system for operators of family child care homes, codified at Health and Safety Code §§ 1596.70 *et al.* Operators of family child care homes provide child care in their own homes for up to 14 children.

11.    The Legislature enacted protections for operators of daycare homes because "[i]t is the intent of the Legislature that family child care homes for children should be situated in normal residential surroundings so as to give children the home environment which is conducive to healthy and safe development. It is the public policy of this state to provide children in a family child care home the same home environment as provided in a traditional home setting. The Legislature declares this policy to be of statewide concern with the purpose of occupying the field to the exclusion of municipal zoning, building and fire codes and regulations governing the use or occupancy of family child care homes for children, except as specifically provided for in this chapter, and to prohibit any restrictions relating to the use of single-family residences for family child care homes for children except as provided by this chapter." Cal. Health & Safety Code § 1597.40.

12.    California specifically protects daycare home operators from losing insurance due to their profession. "The arbitrary refusal to renew a policy of homeowners' insurance solely on the basis that the policyholder has a license to operate a family child care home at the insured location shall subject the insurer to administrative sanctions. . . ." Cal. Ins. Code § 676.1.

13.    The federal Fair Housing Amendments Act prohibits discrimination in the provision of insurance of a dwelling. 42 U.S.C. § 3604(a). This includes, "Refusing to provide . . . property or hazard insurance for a dwelling or providing such services or insurance differently because of" sex or familial status. 24 C.F.R. § 100.70(d)(4). Under the Fair Housing Amendments Act, discrimination includes imposition of a neutral rule that has a disproportionate impact on a protected class without a legitimate business necessity. In Vance v. Bakas, this Court held: "Denying the opportunity to rent to persons intending to run a home day care may be an outwardly neutral practice. But if Plaintiffs' allegations are proven, the policy to not rent to

4

home day care operators for the purpose of running a day care might be found to negatively and disproportionately affect women, and families with children." Vance v. Bakas, 2006 U.S. Dist. LEXIS 11183 (N.D. Cal.).

14.     California's Fair Employment and Housing Act also forbids acting in a manner that has the effect of discriminating based on familial status and gender, where such actions were not necessary to the operation of Defendant's business and did not effectively carry out a significant business purpose. Cal. Gov't Code § 12955.8. It further prohibits discrimination based on familial status and gender, or otherwise making unavailable dwellings because of familial status and gender, in violation of Cal. Gov't Code §§ 12955(a) and 12955(k). In addition, the California Court of Appeals established that actions that have a discriminatory effect on daycare providers can constitute discrimination based on gender and familial status. Sisemore v. Master Financial, Inc., 151 Cal. App. 4th 1386, 1421 (2007).

15.     California's Unruh Act, Civ. Code § 51, prohibits occupational discrimination by a business, which includes insurance companies. In Sisemore, the California Court of Appeals found that the Unruh Act prohibits arbitrary discrimination based on occupation, including discrimination against a day care home provider. Id. at 1409.

16.     California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., prohibits unfair competition and unlawful business practices by any business, including insurance companies.

## VI.     **DEFENDANT'S DISCRIMINATORY HOUSING PRACTICES**

17.     In California, the population of licensed family child care providers includes a higher percentage of families with children and a much higher percentage of women than the general population. According to the Center for the Study of Child Care Employment and the California Child Care Resource and Referral Network, California's licensed family child care workforce is overwhelmingly female. http://www.iir.berkeley.edu/cscce/pdf/statewide_providers.pdf (finding that ninety-six percent of the names in the sample were female); see also Family Child Care Providers and Assistants in

5

*Santa Clara County 2001* (finding that in-home day care providers in Santa Clara County are almost exclusively women, and 59% are parents with children).

18.    Property insurance is a prerequisite for most home loans and for prudent operation of a rental property.

19.    The inability to obtain insurance creates a barrier to maintaining a home or using it as rental property.

20.    Refusing to insure properties occupied as daycare homes has a disparate impact on families with children in that more families with children than households without children are prevented from occupying or insuring the property; therefore, this refusal has the purpose or effect of discriminating in housing on the basis of familial status.

21.    Refusing to insure properties occupied as daycare homes has a disparate impact on women because more women than men are prevented from occupying or insuring the property; therefore, this refusal has the purpose or effect of discriminating in housing on the basis of gender.

22.    By refusing to insure family child care homes, Defendant has engaged in a pattern or practice of discrimination against family daycare providers, families with children, and women.

## VII.    CLASS ALLEGATIONS

23.    The named plaintiffs bring this action on their own behalf and, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all tenants and prospective tenants of USAA-CIC homeowner's insurance policyholders who lost or were denied housing or business opportunities because they operated or planned to operate a family child care home from USAA-CIC insured rental property in California.

24.    The proposed class is this case is estimated to include 242 persons. This estimation is based upon the number of licensed family child care homes in California, the approximate percentage of homes that Defendant insures in California, the average household size and the percentage of renters in the state. According to the California Department of Social

6

Case No.:
COMPLAINT [CLASS ACTION]

1  Services, Community Care Licensing Division, as of May 2008, there were 43,491 licensed

2  family child care homes serving up to 414,538 children.

3  http://ccld.ca.gov/res/pdf/ChildCareStatsMay08.pdf. According to the California Department of

4  Insurance, USAA-CIC currently holds a .45% market share for the issuance of home fire

5  insurance policies.  http://www.insurance.ca.gov/0400-news/0200-studies-reports/0100-market-

6  share/Marketshare2007/upload/IndMktShr2007Alpha.pdf.  According to the United States

7  Census Bureau, the average household size in California is 2.87.

8  http://quickfacts.census.gov/qfd/states/06000.html. Lastly, the homeownership rate in California

9  is 56.9%, meaning that the remaining 43.1% of the population is made up of renters.  Id.  Based

10  on these statistics, it is reasonable to allege that USAA-CIC's practice of refusing to insure

11  homes where tenants operate family child care homes impacts at least 242 individuals (in 84

12  households) in California.  A class of this size is so numerous that joinder of all its members is

13  impracticable.

14      25.    Defendant's practice of refusing to insure rented homes where tenants operate

15  daycares, which forms the basis of this complaint, is common to all members of the class and the

16  relief sought will apply to all of them.

17      26.    There are questions of law and fact common to the class members, including

18  whether Defendant's practice violates the Fair Housing Amendments Act, California's Fair

19  Employment and Housing Act, California's Unruh Civil Rights Act, and California's Unfair

20  Business Practices Act.

21      27.    The claims of the named Plaintiffs, Bree and Micah Kuyat, are typical of the

22  claims of the class.  The claims of the named Plaintiffs and the class arise from the same policy

23  and practice of the Defendant and are based on the same legal theory and statutory violations.

24      28.    The named Plaintiffs, Bree and Micah Kuyat, are capable, through counsel, of

25  adequately representing the class and protecting its interests.

26      29.    Class certification is appropriate pursuant to Federal Rules of Civil Procedure,

27  Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the entire class:

28

7

Case No.:
COMPLAINT [CLASS ACTION]

namely, following a general policy and practice of refusing to insure rented homes where tenants operate family child care homes. Thus, injunctive and declaratory relief is appropriate with respect to the class as a whole.

## VIII.   STATEMENT OF CLASS CLAIMS

30.     Defendant's policy of refusing to insure rented homes where tenants operate family child care homes discriminates against the named Plaintiffs and the entire class on the basis of gender and familial status in violation of various state and federal laws. Because of Defendant's practice, Plaintiffs Bree and Micah Kuyat, and members of the class, have lost or been denied housing based upon their chosen profession as licensed daycare providers. As a result, Plaintiffs have suffered losses and have been forced to move to inferior settings for their daycares. This practice is against a strong public policy in favor of increasing the availability of quality daycare in family child care homes, and prohibiting discrimination based upon a resident's decision to operate a daycare.

## IX.   CLAIMS OF NAMED PLAINTIFFS BREE AND MICAH KUYAT
## A.   EVENTS

31.     In October 2005, the Kuyats rented a home located at 18297 Shadowbrook Way in Morgan Hill, California (hereinafter "the property"), owned by Craig and Cathleen Parshall and managed by Live Oak Property Management. The size and configuration of the house was well-suited for the provision of child care.

32.     Live Oak Property Management operates out of Morgan Hill, California. Suzanne Leech from Live Oak Property Management was responsible for managing the property on behalf of the Parshalls.

33.     At all times relevant to this complaint, the Parshalls had a fire insurance policy on the property through Defendant USAA Casualty Insurance Company.

34.     In the spring of 2006, the Mr. and Ms. Kuyat's daughter was 18 months old and Ms. Kuyat was pregnant with their second child. At that time, Ms. Kuyat was employed at Starbucks. In order to best care for their family, the Kuyats decided that Ms. Kuyat would leave

8

Case No.:
COMPLAINT [CLASS ACTION]

her employment at Starbucks and begin working as a licensed in-home daycare operator so that she could care for their children and continue to have a source of income.   At this time, Ms. Kuyat already had significant experience in the area of child care.  Ms. Kuyat had previous experience working in a home daycare, had babysat for many years, and had taken a number of child development courses.

35.    The Kuyats began taking the steps needed to obtain a license from the California Department of Social Services to operate a small family child care home.  One of those steps is notification to the landlord.

36.    In or about February 2006, the Kuyats spoke with Ms. Leech and asked permission to operate an in-home licensed daycare from the property.

37.    In or about February 2006, Ms. Leech verbally gave Mrs. Kuyat permission to operate the daycare from the property.

38.    On May 2, 2006, Ms. Leech signed a form authorizing the Kuyats to operate an in-home licensed daycare from the property.

39.    In or about May 2006, at the request of Ms. Leech, Ms. Kuyat contacted her insurance company, State Farm, and added the property owners, Craig and Kathy Parshall, to her own insurance policy.

40.    On May 19, 2006, Ms. Kuyat left her employment at Starbucks.  She began babysitting two children on a daily basis at her home.  Her babysitting was in anticipation of getting a license from the California Department of Social Services and operating an in-home licensed daycare.

41.    At her employment at Starbucks, Ms. Kuyat made $11.15 per hour plus $40 weekly in tips, or approximately $1,300 per month.

Ms. Kuyat purchased supplies worth at least $960 in anticipation of opening her day care.

//

//

//

9

42.    In or about July 2006, Defendant informed Cathleen Parshall that Defendant would discontinue insuring the property if a daycare home was operated on the property, regardless of whether the tenants had insurance or a daycare license.

43.    Defendant confirmed this conversation by a letter to the Parshalls dated July 18, 2006.

44.    Ms. Kuyat received a letter from Live Oak Property Management dated July 18, 2006, which ordered her to immediately cease all babysitting and/or daycare operations because Defendant had refused to continue insuring the house if there were any such activities conducted on the premises.

45.    In sending the July 18 letter to Plaintiffs, Live Oak Property Management and the Parshalls were acting under the direction of Defendant.

46.    On August 31, 2006, the Kuyat family moved out of the property because they were not allowed to operate an in-home licensed daycare.

**B.    PROJECT SENTINEL INVESTIGATION**

47.    In November 2006, the Kuyats contacted Project Sentinel—a fair housing organization based in Palo Alto, California—and alleged that Defendant had engaged in discrimination based on operation of a licensed home daycare.

48.    Project Sentinel conducted a test to verify the Kuyats' allegations. On March 9, 2007, a Project Sentinel tester ("Tester") called Defendant and spoke to an employee of Defendant named Misty whose extension was given as 60784.

49.    Tester explained that she owned a home in Watsonville, California, which she rented to tenants. Tester explained that the tenants had inquired about operating an in-home licensed daycare from the rental property. Tester asked the Defendant's employee, Misty, if USAA-CIC would cover the home if there was such a daycare operation.

50.    Defendant's employee stated that USAA-CIC's insurance would not cover liability of such a business. She explained that the risk was too high to be covered. She then

10

suggested to Tester that Tester discourage or refuse to allow the operation of the in-home licensed daycare.

51.    Tester asked if it was possible to obtain adequate coverage from USAA-CIC. The USAA-CIC representative stated that such coverage was not available from USAA-CIC.

**C.    INJURIES**

52.    The Kuyats were damaged by Defendant's actions by not being allowed the opportunity to operate an in-home licensed daycare from their home, which forced them to move out of the property, causing them to lose a housing opportunity. Because of the lack of housing available within their price range at the time that they moved out of the subject property, Ms. and Mr. Kuyat had no choice but to move into a small room at Mr. Kuyat's parents' home, in which they lived for approximately four months. They shared this room with their young daughter and could not conduct daycare business from the home.

53.    After many months of searching, Ms. and Mr. Kuyat finally did find replacement housing—from which they currently operate a licensed family child care home which has passed at least one state inspection—but it is inferior to the subject property and not as well-suited for operating a daycare.

54.    In addition, Ms. and Mr. Kuyat pay more than $300 per month more in rent and utilities than they did while living in the subject property.

55.    As a result of Defendant's actions, the Kuyats lost the opportunity to conduct their planned licensed home daycare, causing a lost business opportunity and a loss of income that would have been generated. Many class members may have suffered these types of damages as well.

56.    As a result of Defendant's actions, the Kuyats spent time and additional resources in a search for a new housing opportunity. They spent additional money buying daycare supplies and paying for moving expenses. Many class members may have suffered these types of damages as well.

11

Case No.:
COMPLAINT [CLASS ACTION]

57.     As a result of Defendant's actions, Ms. Kuyat lost business income because she had to cancel the enrollment of two children for whom she had already agreed to provide daycare; she also lost job opportunities that she turned down in reliance on her plan to operate her own in-home licensed daycare. Many class members may have suffered these types of damages as well.

58.     By reason of Defendant's unlawful acts and practices, Plaintiffs Ms. and Mr. Kuyat have suffered humiliation, mental anguish, and emotional distress, and the attendant physical injuries and conditions, as well as violation of their civil rights and loss of a housing and business opportunity and out-of-pocket expenses. Accordingly, they are entitled to compensatory damages. Many class members may have suffered these types of damages as well.

59.     Defendant has engaged in a pattern or practice of discrimination against family daycare providers, families with children and women. Defendant continues to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

60.     Defendant acted intentionally, maliciously, wantonly, recklessly, and in bad faith as described herein. Accordingly, Plaintiffs are entitled to punitive damages.

61.     There exists now an actual controversy between the parties regarding Defendant's duties under the federal and state fair housing and daycare laws. Accordingly, Plaintiffs and the class are entitled to declaratory relief.

62.     Unless enjoined, Defendant will continue to engage in the unlawful acts and discrimination described above. Plaintiffs and the class have no adequate remedy at law. Plaintiffs and the class are now suffering and will continue to suffer irreparable injury from Defendant's acts and its discrimination against daycare providers unless relief is provided by this Court. Accordingly, Plaintiffs and the class are entitled to injunctive relief.

//

//

//

//

12

## X.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

*Violation of Fair Housing Amendments Act, 42 U.S.C. § 3601 et seq.*

63.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 63 above.

64.    This claim is brought on behalf of Plaintiffs and the entire class.

65.    Defendant injured Plaintiffs and the class in violation of the Fair Housing Amendments Act (FHAA) by discriminating or otherwise making unavailable dwellings because of familial status and sex, in violation of 42 U.S.C. § 3604(a).

66.    As a proximate result of Defendant's conduct, Plaintiffs and the class have been damaged, as set forth above.

### SECOND CAUSE OF ACTION

*Violation of the California Fair Employment and Housing Act,*

*Cal. Gov't Code § 12955 et seq.*

67.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 67 above.

68.    This claim is brought on behalf of Plaintiffs and the class.

69.    Defendant has injured Plaintiffs and the class in violation of the California Fair Employment and Housing Act by:

A.    Acting in a manner that has the effect of discriminating based on familial status and gender, where such actions were not necessary to the operation of Defendant's business and did not effectively carry out a significant business purpose, in violation of Cal. Gov't Code § 12955.8; and

B.    Discriminating or otherwise making unavailable dwellings because of familial status and gender, in violation of Cal. Gov't Code §§ 12955(a) and 12955(k).

70.    As a proximate result of Defendant's conduct, Plaintiffs and the class have been damaged, as set forth above.

13

**THIRD CAUSE OF ACTION**

*Violation of the California Unruh Civil Rights Act, Cal. Civ. Code § 51*

71.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 71 above.

72.    This claim is brought on behalf of Plaintiffs and the class.

73.    In doing the things herein alleged, Defendant has violated the right of Plaintiffs and the class to fair housing under the Unruh Civil Rights Act, Cal. Civil Code § 51, in that Defendant discriminated based on an arbitrary characteristic—namely, the operation of a family child care home—in the operation of Defendant's business establishment.

74.    The conduct of Defendant alleged herein constitutes a denial of full and equal access to a business establishment to Plaintiffs and the class within the meaning of California Civil Code § 51 *et seq.*  In accordance, Plaintiffs and the class are entitled to statutory damages as establish by California Civil Code § 52.

75.    As a proximate cause of Defendant's conduct, Plaintiffs and the class have been damaged, as set forth above.

**FOURTH CAUSE OF ACTION**

*Violation of California Unfair Business Practices Act, Bus. & Prof. Code § 17200*

76.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in Paragraphs 1 through 76 above.

77.    This claim is brought on behalf of the Plaintiffs and the class.

78.    In acting as herein alleged, Defendant has engaged in a pattern or practice of unlawful discrimination against daycare providers in the issuing of insurance, through its business establishment, and therefore has engaged in an unlawful business practice and acts of unfair competition as the same are defined in § 17200 of the California Business and Professions Code.

79.    Defendant's actions were in violation of statutes, including but not limited to California Health & Safety Code § 1597.40; California Ins. Code §§ 676, 676.1; the California

14

Fair Employment and Housing Act; and the Fair Housing Amendments Act, and thus per se

constitute unlawful business practices and acts of unfair competition.

80.    California Health & Safety Code § 1597.40 prohibits indirect and direct

restrictions relating to the use of dwellings for family child care home homes for children.

81.    California Ins. Code § 676 prohibits an insurance company from threatening to

cancel an insurance policy on prohibited grounds.

82.    California Ins. Code § 676.1 prohibits an insurance company from cancelling or

not renewing an insurance policy because of the operation of a daycare home at the property.

83.    Defendant violated all of these statutes by refusing to insure the property if a

daycare home was operated at the property and by refusing to insure other properties used as

licensed daycare homes.

84.    As a proximate cause of Defendant's conduct, Plaintiffs and the class have been

damaged, as set forth above.

85.    Defendant's unlawful discrimination against daycare providers in the issuance of

insurance has injured plaintiffs and is likely to injure the general public.

86.    Pursuant to California Business & Professions Code §§ 17203 and 17535,

Plaintiffs, individually and on behalf of the class, seek an order of this Court enjoining

Defendant from continuing to engage in its unlawful discrimination against daycare providers.

Plaintiffs and the class will be irreparably harmed if such an order is not granted.

## XI.    RELIEF

Wherefore, Plaintiffs pray for the following relief:

1.    That the court grant certification of the class under Federal Rule of Civil

Procedure 23(b)(2), designation of Plaintiffs Bree and Micah Kuyat as representatives of the

class, and designation of their counsel of record as Class Counsel.

2.    That the Court provide class-wide relief by enjoining all unlawful practices

complained about herein and imposing affirmative injunctive relief requiring Defendant, its

employees, and all persons acting in concert or participating with them, to take affirmative action

15

Case No.:
COMPLAINT [CLASS ACTION]

to provide home insurance regardless of operation of family child care homes, including providing training regarding daycare protection and fair housing laws for all employees and agents, and enjoining Defendant from refusing to insure properties operated as licensed home family child care homes.

      3.     That the Court declare that Defendant violated the provisions of applicable federal and state discrimination and daycare protection laws;

      4.     That the Court award compensatory damages to Plaintiffs, according to proof;

      5.     That the court award punitive damages to Plaintiffs and the class, according to proof;

      6.     That the Court award statutory damages to Plaintiffs under California Civil Code § 52;

      7.     That the Court order restitution to Plaintiffs, including disgorgement of profits obtained from engaging in unlawful business practices;

      8.     That the Court grant costs of suit, including reasonable attorney's fees; and

      9.     That the Court grant all such other relief as the Court deems just.

Dated: July 17, 2008           LAW FOUNDATION OF SILICON VALLEY

Kim Pederson
Attorneys for Plaintiffs

16

## XII.    JURY DEMAND

Pursuant to Federal Rules of Civil Procedure, Rule 38(b), Plaintiffs and the class they represent hereby request a trial by jury as to each and every claim for which they are so entitled.


Dated: July 17, 2008                         LAW FOUNDATION OF SILICON VALLEY


_____
Kim Pederson
Attorneys for Plaintiffs

17

Case No.:
COMPLAINT [CLASS ACTION]

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Bree Kuyat and Micah Kuyat

## DEFENDANTS

USAA Casualty Insurance Company

*E-filing*

**(b)** County of Residence of First Listed Plaintiff  SANTA CLARA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Law Foundation of Silicon Valley
111 W. St. John Street, Suite 315
San Jose, CA 95113
Tel: (408) 280-2467

Attorneys (If Known)

**ADR**

**C08  03448  RS**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                         and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 490 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities— Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities— Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus — Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Federal Fair Housing Amendments Act, 42 U.S.C. 3604 et seq.

Brief description of cause:
Housing discrimination based on gender and familial status for failure to provide homeowners' insurance.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ N/A

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND    ☒ SAN JOSE

DATE  7.17.08

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*